**UNITED STATES DISTRICT COURT**
**DISTRICT OF IDAHO**

| | |
|---|---|
| PINE QOZB, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>ARCO/MURRAY NATIONAL CONSTRUCTION COMPANY, INC., a Delaware corporation,<br><br>Defendant. | Case No.: 1:24-cv-00295-BLW-REP<br><br>**MEMORANDUM DECISION AND ORDER RE: PLAINTIFF'S MOTION TO STAY AND DETERMINE ARBITRABILITY (DKT. 4) AND DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY COURT PROCEEDINGS (DKT. 10)** |

Pending before the Court is Plaintiff's Motion to Stay Arbitration and Determine Arbitrability (Dkt. 4) and Defendant's Motion to Compel Arbitration and Stay Court Proceedings (Dkt. 10). As discussed below, the Court will deny Plaintiff's Motion and grant Defendant's Motion.[1]

## I. BACKGROUND

This case involves a construction agreement (Agreement) between Plaintiff Pine QOZB, LLC (Pine) and ARCO/Murray National Construction, Inc. (ARCO), wherein ARCO agreed to build a large apartment complex in Meridian, Idaho. The Agreement contains arbitration and liquidated damages provisions that are the subject of the instant motions. What began as a contractual disagreement over these provisions has evolved into a dispute about payments and damages.

[1] "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the Federal Arbitration Act compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). Thus, given that a decision to grant ARCO's present Motion is not dispositive, the Court issues this Memorandum Decision and Order, rather than a Report and Recommendation.

On June 20, 2024, Pine filed a Complaint against ARCO seeking declaratory judgment for alleged liquidated damages wherein it claimed that ARCO failed to timely deliver the Project. (Dkt. 1, p. 4). Approximately one month later, Pine filed its Motion to Stay Arbitration and Determine Arbitrability, arguing that the present dispute is governed by the liquidated damages provision of the Agreement and, therefore, the arbitration provision does not apply. (Dkt. 4).

In its Answer on September 10, 2024, ARCO denied that Pine is entitled to any liquidated damages and that the dispute is subject to the arbitration provision in the Agreement because the fundamental issue is payment obligations. (Dkt. 9). That same day, ARCO filed its Motion to Compel Arbitration and Stay Court Proceedings wherein it emphasized again that it believes Pine has breached its payment obligations which requires arbitration under the relevant provision. (Dkt. 10; Dkt. 11).

At the time the Complaint was filed, Pine was undisputedly withholding payment from ARCO based on its claim of liquidated damages. (Dkt. 1, p. 5). Almost five months after filing, however, Pine paid the undisputed amount ("Lien Payoff"). (Dkt. 19). On November 13, 2024, Pine filed a Supplement in which it explained that the only dispute remaining concerned liquidated damages and committed to continuing its pursuit of them. *Id.* at 2. On November 9, 2024, ARCO responded and claimed the Lien Payoff confirmed that the dispute involved payment obligations subject to the arbitration provision in the Agreement. (Dkt. 22, p. 3).

## II. <u>LEGAL STANDARD</u>

The Federal Arbitration Act (FAA) applies to arbitration agreements related to interstate commerce. 9 U.S.C. § 2; *Southland Corp. v. Keating*, 465 U.S. 1, 10-17 (1984); *Wattenbarger v. A.G. Edwards & Sons, Inc.*, 246 P.3d 961, 968 (Idaho 2010). Yet, "where parties have expressly agreed that Idaho law will govern arbitration, the Idaho [Uniform Arbitration Act], not the FAA, applies as the substantive law in arbitration." *Moore v. Omnicare, Inc.*, 118 P.3d 141, 147 (Idaho

2005) (cleaned up). Under both Idaho law and the FAA, an arbitration provision is "is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." Idaho Code Ann. § 7-901; 9 U.S.C.A. § 2. Additionally, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Moses H. Cone Meml. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *Shake Out, LLC v. Clearwater Constr., LLC*, 535 P.3d 598, 604 (Idaho 2023) (stating the Idaho Uniform Arbitration Act (IUAA) parallels the FAA).

Whether a dispute is subject to an arbitration agreement is a matter of law for the Court to decide. *Lewis v. CEDU Educ. Serv., Inc.*, 135 Idaho 139, 142 (Idaho 2000). Substantial arbitrability is the gateway question a court must answer to determine whether a party agreed to arbitrate the type of dispute before it. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). To do this, courts must determine whether there is a valid and enforceable contract and if the arbitration provision covers the current dispute within its scope. *Id.* at 84.

## III. DISCUSSION

### A. Arbitration

The parties do not dispute the validity of their Agreement or its inclusion of a valid and enforceable arbitration provision. Therefore, the only question before this Court is whether the present dispute falls within the scope of that valid arbitration provision.

Pine believes that the present dispute need not be submitted to arbitration because it is fundamentally about liquidated damages which falls under a different provision of the Agreement. Pine argues that the application and calculation of liquidated damages is subject to Section 8 of the Agreement which provides:

> Contractor acknowledges that Owner will suffer significant financial damages if Contractor does not achieve Substantial Completion of any portion of the Work by the Substantial Completion Deadline for that

> portion of the Work. Contractor further acknowledges that the actual damages that would likely be incurred by Owner would be expensive and burdensome to dispute. Therefore, in-lieu-of engaging in an expensive and burdensome dispute about actual damages, Owner and Contractor agree that, subject to the terms hereof, if Contractor does not achieve Substantial Completion of any portion of the Work by the Substantial Completion Deadline for that Work, then Contractor will pay Owner, liquidated damages as set forth in the Liquidated Damages Schedule for each day thereafter until Substantial Completion of the applicable Work is achieved. Contractor and Owner agree that the liquidated damages represent a reasonable estimate of the actual damages that would likely be incurred by Owner due to Contractor's failure to achieve Substantial Completion of the applicable Work by the Substantial Completion Deadline. The liquidated damages provided in the Substantial Completion Schedule are in-lieu-of, and replace, and so Owner hereby waives any loss of use consequential damages incurred by Owner arising from Contractor's failure to achieve Substantial Completion of the applicable Work by the Substantial Completion Deadline for the applicable Work.

(Dkt. 1, Ex. A, § 8.81).

Pine maintains that this Section controls because "liquidated damages" is so distinct from "payment obligations" contemplated under the arbitration provision that the arbitration provision does not apply. (Dkt. 4, p. 2). Pine contends that while both arise out of contractual disagreements, the two address completely different issues: the former being stipulated damages for breach, and the latter being timing, sufficiency, or mechanism for payment. (Dkt. 4, p. 5). Pine also claims that after the Lien Payoff, the only dispute that remains is about liquidated damages which is not required to be submitted to arbitration. (Dkt. 19, p. 2).

ARCO counters that withholding the undisputed amounts, the eventual payment thereof via the Lien Payoff, and the continued pursuit of its claim for liquidated damages, all constitute a breach of Pine's payment obligations and therefore are subject to arbitration. (Dkt. 11; Dkt. 19, p. 2). ARCO's position is that its *belief* that Pine has breached its payment obligations is a sufficient condition to trigger arbitration. (Dkt. 11,

p. 8). The Court agrees based on the plain meaning of the provision's language in Section 17.8. The provision states:

> *If Contractor believes* that Owner has breached Owner's payment obligations to Contractor under this Agreement, or if any other dispute that this Agreement expressly states may be resolved by arbitration pursuant this Section 17.8, then Owner and Contractor agree that the Claim will be resolved by an individual arbitration conducted in accordance with Idaho's Uniform Arbitration Act (Title 7, Chapter 9, Idaho Code) (the "Arbitration Act"); provided that (1) there will be only one arbitrator, (2) any in-person hearings will be held in Ada County, Idaho, (3) parties and witnesses may appear telephonically or by video technology, and (4) the arbitrator's fees and costs will be shared between [Plaintiff] and [Defendant] equally.

(Dkt. 1, Ex. A, § 17.8) (emphasis added).

Here, the language of the Agreement is unambiguous. Despite Pine's claim to the contrary, ARCO certainly *believes* that Pine has breached its payment obligations. (Dkt. 4, p. 3; Dkt. 11, p. 9). When the language of a contract is unambiguous, the Court will apply the plain meaning of the Agreement. *Bakker v. Thunder Spring-Wareham, LLC*, 108 P.3d 332, 337 (Idaho 2005) (quoting *Lamprecht v. Jordan, LLC,* 139 Idaho 182, 185–86, 75 P.3d 743, 746–47 (2003)). Hence, the Court finds this dispute falls within the scope of the provision based on the plain meaning of the words the parties chose in their Agreement.

Even were the words in the Agreement susceptible to conflicting interpretations, federal policy requires that they "should be resolved in favor of arbitration . . . ." *Moses*, 460 U.S. at 24–25 (1983); *Shake Out, LLC,* 535 P.3d at 604. Consequently, the plain meaning of the Agreement in concert with federal policy favoring arbitration locates the present dispute within the scope of Section 17.8.

This Court is not alone in its analysis. The District of Montana recently issued a decision interpreting this same provision in ARCO's contracts to reach the same conclusion. *See Oxbow Land Holdings, LLC v. ARCO/Murray Natl. Constr. Co., Inc.*,

No. CV 24-93-BU-JTJ, 2024 WL 4973431 (D. Mont. Dec. 4, 2024).[2] There, the plaintiff also withheld payment while asserting a claim for liquidated damages. *Id.* at *1. The plaintiff argued, as Pine does here, that the dispute was not governed by the arbitration provision because their claim was for liquidated damages which were distinct from payment obligations. *Id.* at *2. The court found that whether the dispute was within the scope of the arbitration provision hinged on whether ARCO believed the plaintiff had breached its payment obligations. *Id.* Accordingly, since ARCO held this belief, the court found that the dispute was subject to the arbitration provision under the ordinary meaning of the language used by the parties. *Id.*

As in *Oxbow*, the Court finds no reason here to doubt the genuineness of ARCO's belief. A review of the briefing reveals that the germ of this disagreement lies in calculating deadlines. These calculations determine if ARCO completed work on time and therefore whether Pine breached when it withheld payment. (Dkt. 1, pp. 4–6; Dkt. 22, p. 16). Of course, the parties' calculations led to different conclusions. (Dkt. 1, p. 4; Dkt. 9, pp. 15–16). While calculating delays and conditions which offset them are procedural matters, and thus not for this Court to decide (*See Howsam*, 537 U.S. at 84), a disagreement as to whether deadlines have been met almost certainly involves a dispute regarding who owes what to whom. Therefore, the overall trajectory of this disagreement lends credibility to ARCO's belief that this dispute is fundamentally about payment obligations. Accordingly, the Court finds that the arbitration provision of the Agreement applies to the instant dispute and it grants ARCO's Motion.

**B. Attorney's Fees**

---

[2] ARCO, being the defendant in this case as well, provided the Court with Notice of this decision filed on December 24, 2024. (Dkt. 23).

State law governs whether a party is entitled to attorney's fees, while federal law governs the procedure for their request. *Carnes v. Zamani*, 488 F.3d 1057, 1059 (9th Cir. 2007). Under Idaho Law, "[t]he prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs." Idaho Code Ann. § 12-120. Like many jurisdictions, Idaho follows the "American Rule" of attorney's fees which requires parties to each pay their own attorney's fees save for exceptions provided by statute or contract. *Mortensen v. Stewart Title Guar. Co.*, 235 P.3d 387, 397–98 (Idaho 2010). Indeed, "[c]ontractual terms providing for recovery of attorney's fees incurred in actions to enforce the contract . . . are ordinarily to be honored by the courts." *Zenner v. Holcomb*, 210 P.3d 552, 560 (Idaho 2009).

Here, Section 17.6 of the Agreement states that "[i]n the event of any litigation between the parties arising from or related to this Agreement . . . the *prevailing* party will be entitled to . . . attorney's fees . . . ." (emphasis added). The question is whether ARCO's success on their Motion renders them the "prevailing party" under this term of the Agreement. Because granting this Motion is a preliminary procedural order and does not reach the merits, thereby leaving the legal relationship between the parties unchanged, the Court agrees with those courts which have declined to award attorney's fees. *See Oxbow* at *3 (D. Mont. Dec. 4, 2024) (collecting cases). Since ARCO has not prevailed on the merits, but only on this procedural matter, attorney's fees will not be awarded here.

## IV. ORDER

Based on the foregoing, IT IS HEREBY ORDERED that (1) Plaintiff's Motion to Stay Arbitration and Determine Arbitrability (Dkt. 4) is DENIED and (2) Defendant's Motion to

Compel Arbitration and Stay Court Proceedings (Dkt. 10) is GRANTED. This case is stayed pending arbitration.




DATED: March 28, 2025

Honorable Raymond E. Patricco
Chief U.S. Magistrate Judge